561 So.2d 628 (1990)
Vilacin SAINT LOUIS, Appellant,
v.
STATE of Florida, Appellee.
No. 87-00980.
District Court of Appeal of Florida, Second District.
May 4, 1990.
James Marion Moorman, Public Defender, Bartow, and D.P. Chanco, Asst. Public Defender, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Davis G. Anderson, Asst. Atty. Gen., Tampa, for appellee.
PARKER, Judge.
Vilacin Saint Louis appeals the judgment adjudicating him guilty of conspiracy to traffic in cocaine, arguing insufficiency of the evidence.[1] We agree and reverse.
The following is the evidence against Saint Louis presented in the light most favorable to the state. Undercover officers had talked with codefendants Servibien and Mathurin about buying a large amount of cocaine. On a prearranged date the officers met Servibien on a street and agreed to meet him at a mobile home. The officers went to the mobile home and in approximately ten minutes Servibien arrived at the mobile home and went inside the mobile home. Then after fifteen minutes Servibien came out of the mobile home. Servibien said that he could obtain the cocaine if the officers could acquire the money. They agreed to meet back at the mobile home between 9:30 p.m. and 10:00 p.m. to show Servibien the money. At *629 10:10 p.m. the officers returned to the mobile home and showed Servibien the money. Servibien told the officers to come back in forty minutes for the cocaine. At 10:50 p.m. the officers returned. Saint Louis approached the officers and tried to sell them cocaine. Neither Servibien nor Mathurin were at the mobile home at that time. When the officers returned to the mobile home at 11:10 p.m., Servibien, Mathurin, and Saint Louis were there. Four cars were parked in the drive, forming an inverted U, with Servibien and Mathurin in a car to the left, an unoccupied car up front, and Saint Louis in a car parked on the right.[2] The officers pulled up in the middle. The officers' testimony differed as to Saint Louis' presence. One officer testified that the car to the right had its door open and Saint Louis was standing there with his elbow on the roof. The other officer testified that Saint Louis must have been either lying down or crouched in the car because she did not see him in the car at that time but saw him exit the car when the other officers arrived. The officers asked Servibien for the cocaine. Servibien and Mathurin went to the unoccupied vehicle. Servibien returned with a brown bag. Mathurin returned with a gun. The officers signaled for their backup units, and Servibien, Mathurin, and Saint Louis fled.
In order to prove the crime of conspiracy, the state must prove the following two elements: (1) an agreement and (2) an intention to commit an offense. Beke v. State, 423 So.2d 417 (Fla.2d DCA 1982), review denied, 430 So.2d 450 (Fla. 1983). The state must prove these elements beyond a reasonable doubt. Ashenoff v. State, 391 So.2d 289 (Fla.3d DCA 1980). Mere presence at the scene is insufficient to establish a conspiracy. Gonzalez v. State, 455 So.2d 1131 (Fla.2d DCA 1984).
A review of the record shows that the state did not prove beyond a reasonable doubt that Saint Louis entered into an agreement with Servibien and/or Mathurin to sell cocaine to the officers. In fact, the officers' first encounter with Saint Louis when he offered to sell the officers cocaine on his own is inconsistent with the hypothesis that he was part of the conspiracy with Servibien and Mathurin. Saint Louis' presence when Servibien had the cocaine and Mathurin had a gun coupled with the fact that Saint Louis fled is still insufficient to prove conspiracy.
Reversed and remanded with directions to the trial court to enter a judgment of acquittal for the offense of conspiracy to traffic in cocaine in favor of Saint Louis.
SCHOONOVER, A.C.J., and LEHAN, J., concur.
NOTES
[1] The state also charged Saint Louis with possession of cocaine, delivery of cocaine, and trafficking in cocaine. The jury acquitted Saint Louis of those offenses.
[2] The fourth vehicle was on the side; however, the record is unclear whether it was parked on the right or left side.